UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH C. MALFITANO,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN HEWITT, et al.,<br><br>Defendants. | Case No. 16-cv-05339-MEJ<br><br>**ORDER SCREENING THIRD AMENDED COMPLAINT; DISMISSING ACTION WITH PREJUDICE**<br><br>Re: Dkt. No. 18 |

## INTRODUCTION

Plaintiff Joseph Malfitano ("Plaintiff") filed his original Complaint on September 16, 2016. *See* Compl., Dkt. No. 1. As Plaintiff was proceeding in forma pauperis, the Court screened the Complaint, as well as the subsequent First and Second Amended Complaints, pursuant to 28 U.S.C. § 1915(e)(2) and dismissed each with leave to amend. *See* First Screening Order, Dkt. No. 7; Second Screening Order, Dkt. No. 11; Third Screening Order, Dkt. No. 14. Plaintiff has filed a Third Amended Complaint ("TAC"). *See* Dkt. No. 18.

Because Plaintiff continues to proceed in forma pauperis, the Court screens the TAC anew. For the reasons stated below, the Court **DISMISSES** the TAC **WITH PREJUDICE**.

## BACKGROUND

**A. Prior Screening Orders**

In each of his pleadings, Plaintiff has alleged that Antioch Police Department ("APD") officers raided his home, arrested him, and placed him on a no-bail hold that caused him to be held in jail for six days, and that all charges against him were eventually dismissed. Plaintiff also has alleged that defendant Detective Hewitt pursued a relationship with Plaintiff's wife while Hewitt was investigating a case against Plaintiff, and that Hewitt removed evidence—including a phone and a Macy's gift card—from the APD and gave it to Plaintiff's wife at her request. In its First,

Second, and Third Screening Orders, the Court held the Complaints did not adequately explain the events giving rise to Plaintiff's claims, and did not allege Plaintiff had complied with the requirements of the California Tort Claims Act ("CTCA"), Cal. Gov't Code §§ 910, et seq. *See* First Screening Order; Second Screening Order; Third Screening Order.

In its Second Screening Order, the Court explained that "Plaintiff contends alternatively that Detective Hewitt was trying to frame Plaintiff and/or was trying to visit Plaintiff's wife, but he does not allege Detective Hewitt arrested him, caused the District Attorney to attempt to revoke his probation, or filed a false police report regarding the June 4, 2015 incident. Plaintiff's allegations fail to clearly articulate how Detective Hewitt violated Plaintiff's rights." *Id.* at 5-6. The Court noted the FAC did not address either Defendants Chief of Police Alan Cantando or the City of Antioch ("Antioch"). *Id.* at 6. Finally, the Court found that, once again, it could not ascertain when Plaintiff's claims accrued and whether he complied with the CTCA. *Id.* at 7.

In its Third Screening Order, the Court found the following:

(1) Plaintiff failed to allege that Hewitt was the or part of the cause of the June 2015 raid at his home, when the raid appeared to form the basis for Plaintiff's Section 1983 claims; and "[i]f Plaintiff's Section 1983 claim is based on the removal of a Macy's gift card from evidence by Hewitt or Hewitt's inappropriate contact with Plaintiff's wife, Plaintiff does not appear to allege those actions violate his constitutional rights." Third Screening Order at 6-7.

(2) To the extent Plaintiff's Section 1983 claim was based on Cantando's failure to discipline Hewitt for his allegedly inappropriate contact with Plaintiff's wife or with respect to the removal of the Macy's gift card from evidence, Plaintiff failed to allege that Cantando knew or should have known of Hewitt's misconduct, or that the failure to discipline Hewitt for this conduct amounts to a violation of Plaintiff's constitutional rights. The Court noted that "[i]f his claim against Cantando is based on Cantando's failure to discipline Doe Defendants for other violations, Plaintiff fails to plead those other violations with particularity, and fails to plead that Cantando's failure to discipline the Doe Defendants constitutes a constitutional violation." *Id*. at 7.

(3) None of the policies or practices Plaintiff alleged in the SAC to plead his Section 1983 claim against Antioch pertain to Hewitt's inappropriate relationship with Plaintiff's wife or

2

removal of evidence; as such, Plaintiff failed to allege Antioch's policy or practice was the moving force behind Hewitt's violation of Plaintiff's constitutional rights. *Id*. Plaintiff also failed to plead sufficient facts to show that any Defendant violated his constitutional rights during the June 2015 raid in ways that relate to the policies he identified in the SAC.

(4) The Court again found that Plaintiff's allegations that he filed a timely CTCA claim were deficient.

**B.     The Third Amended Complaint**

In the TAC, Plaintiff alleges:

(1) "Following a *Pitches*[*s*] Motion, the People dismissed the criminal action, i.e., a probation revocation proceedings, against Malfitano on February 26, 2016." TAC ¶ 3; *see also id*. at ¶ 37 (the district attorney would dismiss the proceedings upon a *Pitchess* motion).

(2) APD, "a department of Antioch under the command of Chief Cantando, maintains a policy of not adequately training, supervising, monitoring or disciplining its officers or its evidence lockers such that Detective Hewitt and who knows countless others are able to freely remove booked evidence for one's own personal use and gain without a single adverse consequence." *Id*. ¶ 16(a).

(3) The APD "maintains a policy of not adequately training, supervising, monitoring or disciplining its officers or its official report writing such that Detective Hewitt and countless others are able to freely write reports to deceive and mislead the district attorney to level false charges for one's own personal use and gain without a single adverse consequence." *Id*. ¶ 16(b).

(4) The APD "protects its lack of policy" by dismissing charges against wrongly accused defendants only before they might be compelled to disclose its officers' wrongdoing or disclose its inadequate policies that lead to violations of constitutional rights of countless others. *Id*. ¶ 16(c).

(5) Plaintiff placed an "SMS Tracker" on the phone used by his wife, Sandy Towasha, without Towasha's knowledge. *Id*. ¶ 18. (Plaintiff alleges he paid for the phone, but that Towasha used it.)

(6) On June 4, 2016, Plaintiff and Towasha got into a "really loud and ugly" argument. *Id.* ¶ 20. Plaintiff left, taking Towasha's phone with him. *Id.* While searching for Towasha's car,

3

unidentified APD officers contacted Towasha around midnight; Towasha joked with the officers and became friendly with them. *Id*.

(7) Unidentified APD officers "raided [Plaintiff's] home at gunpoint and took him to jail in front of his family", where he was booked on firearm charges and held for six days even though he was only on informal court probation on a misdemeanor. *Id.* ¶ 23. The officers also placed him on a no-bail-hold so he could not bail out. *Id.* His public defender subsequently told him there was "nothing but a probation violation. No report. No nothing." *Id*.; *but see id.* ¶ 24 (the judge released Plaintiff on bail).

(8) Detective Hewitt introduced himself to Towasha on the phone the day after the raid. *Id.* ¶ 22. She told Hewitt she needed her phone, which had been booked into evidence; Hewitt told her to meet him at the station to get it. *Id.* Hewitt gave her the phone; he called her thereafter, suggesting they had met before and telling Towasha, "We've been trying to catch [Plaintiff]. We can keep him in jail, but you need to get a restraining order." *Id.* Hewitt and Towasha then discussed her career as a dancer, and Hewitt stated, "I'll do anything I can to help you. And I [sic] try to keep him in jail as long as possible. I'll keep you informed on his status." *Id*. Hewitt continued to call and visit Towasha at her home, even while Towasha was a witness against Plaintiff. *Id*. ¶¶ 27-28. Hewitt removed booked evidence to give to Towasha, "[j]ust to get in with her." *Id*. ¶ 27. He visited Towasha at work to get a private dance, and exchanged pictures with her through her phone, which were captured via the SMS Tracker. *Id*. ¶ 28. Malfitano "turned over most of SMS Tracker information to APD Detective Terra Nissen to help her investigation of Detective Hewitt. Malfitano is informed and believes and thereon alleges that Detective Hewitt has been fired from APD." *Id*. ¶ 27. Hewitt "used his badge, his uniform, his legal authority to make sure Malfitano was charged just so that he could come on his wife, Towasha." *Id*. ¶ 36.

(9) Malfitano's booking information was not uploaded to "Mobile Patrol" for three days; normally, Towasha could find a person's arrest information within 30 minutes of an arrest. *Id.* ¶ 23. Towasha was directed to speak only to Hewitt whenever she called the APD or jail for information about Plaintiff. *Id*.

(10) Plaintiff was placed on a "no bail hold"; as such, the judge did not release Plaintiff on

unidentified APD officers contacted Towasha around midnight; Towasha joked with the officers and became friendly with them. *Id*.

(7) Unidentified APD officers "raided [Plaintiff's] home at gunpoint and took him to jail in front of his family", where he was booked on firearm charges and held for six days even though he was only on informal court probation on a misdemeanor. *Id.* ¶ 23. The officers also placed him on a no-bail-hold so he could not bail out. *Id.* His public defender subsequently told him there was "nothing but a probation violation. No report. No nothing." *Id*.; *but see id.* ¶ 24 (the judge released Plaintiff on bail).

(8) Detective Hewitt introduced himself to Towasha on the phone the day after the raid. *Id.* ¶ 22. She told Hewitt she needed her phone, which had been booked into evidence; Hewitt told her to meet him at the station to get it. *Id.* Hewitt gave her the phone; he called her thereafter, suggesting they had met before and telling Towasha, "We've been trying to catch [Plaintiff]. We can keep him in jail, but you need to get a restraining order." *Id.* Hewitt and Towasha then discussed her career as a dancer, and Hewitt stated, "I'll do anything I can to help you. And I [sic] try to keep him in jail as long as possible. I'll keep you informed on his status." *Id*. Hewitt continued to call and visit Towasha at her home, even while Towasha was a witness against Plaintiff. *Id*. ¶¶ 27-28. Hewitt removed booked evidence to give to Towasha, "[j]ust to get in with her." *Id*. ¶ 27. He visited Towasha at work to get a private dance, and exchanged pictures with her through her phone, which were captured via the SMS Tracker. *Id*. ¶ 28. Malfitano "turned over most of SMS Tracker information to APD Detective Terra Nissen to help her investigation of Detective Hewitt. Malfitano is informed and believes and thereon alleges that Detective Hewitt has been fired from APD." *Id*. ¶ 27. Hewitt "used his badge, his uniform, his legal authority to make sure Malfitano was charged just so that he could come on his wife, Towasha." *Id*. ¶ 36.

(9) Malfitano's booking information was not uploaded to "Mobile Patrol" for three days; normally, Towasha could find a person's arrest information within 30 minutes of an arrest. *Id.* ¶ 23. Towasha was directed to speak only to Hewitt whenever she called the APD or jail for information about Plaintiff. *Id*.

(10) Plaintiff was placed on a "no bail hold"; as such, the judge did not release Plaintiff on

his own recognizance and instead set bail at $15,000. *Id.* ¶ 24. After a subsequent arrest for missing a court date, Plaintiff bailed out after a day or two. *Id.* ¶ 25.

(11) Cantando failed to discipline Hewitt and the APD officers involved in the raid on Plaintiff's house. *Id.* ¶ 32.

(12) The East County Today News published an article about Plaintiff "saying he was a homicidal, suicidal maniac pointing a gun at his wife and kid. The article was based off of a bogus police report that resulted in dismissal." *Id.* ¶ 26.

(13) Plaintiff believes Hewitt was trying to frame him in connection with a homicide investigation. *Id.* ¶ 30.

Based on these allegations, Plaintiff argues "defendants, Hewitt, and Does 1-25" violated 42 U.S.C. § 1983 by depriving him of his constitutionally protected rights to be free from unreasonable searches and seizures, to be deprived of liberty without due process of law, and to enjoy civil and statutory rights. *Id.* ¶ 47. He asserts Antioch is liable for these violations under *Monell[1]*, and Cantando bears supervisory liability for the acts of Hewitt because he ratified Hewitt's actions, ignored complaints, knowingly allowed his subordinates to disperse false information about Malfitano and others, and failed to investigate citizen complaints. *Id.* ¶¶ 50-56. In addition, Plaintiff asserts a number of state law claims.

**LEGAL STANDARDS**

**A. Federal Pleading Standard**

Federal Rule of Civil Procedure 8 requires Plaintiff to provide a "short and plain statement" of the claims, but "more than an unadorned, the defendant-unlawfully-harmed-me accusation" to help the Court logically connect how the defendant caused Plaintiff's injury and show what claims for relief exist. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "[A] plaintiff's obligation to provide the 'grounds' for . . . 'entitlement to relief' requires more than labels and conclusions . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[1] *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978).

5

### B.     42 U.S.C. § 1983

Under Section 1983,
> [E]very person who, under color of any statute ... custom, or usage of any State ... subjects, or causes to be subjected, any ... person within the jurisdiction of [the United States] to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

*Flores v. Cty. of L.A.*, 758 F.3d 1154, 1158 (9th Cir. 2014) (citing *Monell*, 436 U.S. at 694, and other cases). To plead a Section 1983 claim against an individual, Plaintiff must allege (1) the conduct that harmed him was committed under color of state law (i.e., state action), and (2) the conduct deprived him of a constitutional right. *See Ketchum v. Alameda Cty.*, 811 F.2d 1243, 1245 (9th Cir. 1987). "Neither state officials nor municipalities are vicariously liable for the deprivation of constitutional rights by employees." *Flores*, 758 F.3d at 1158. Therefore, to plead a Section 1983 claim against a municipality for a violation of constitutional rights resulting from governmental inaction or omission, Plaintiff must allege (1) he possessed a constitutional right of which he was deprived; (2) the municipality had a policy; (3) this policy amounts to deliberate indifference to Plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation. *See Plumeau v. Sch. Dist. #40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). A plaintiff may establish *Monell* liability by "prov[ing] that an officer committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Wilson v. Fla. Dep't of Revenue*, 2015 WL 136557, at *6 (N.D. Cal. Jan. 8, 2015) (internal quotation marks omitted). "In the alternative, *Monell* liability may be established where the 'individual who committed the constitutional tort was an official with final policy-making authority' or 'an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* (internal citations omitted). But municipalities are not liable under Section 1983 if they do not have the power to remedy the alleged violation. *See Estate of Brooks v. United States*, 197 F.3d 1245, 1248-49 (9th Cir. 1999) (upholding dismissal of § 1983 excessive detention claim against county because under state statute county did not have power either to release federal detainee or bring him before federal

1   judge).

2   Plaintiff must demonstrate that each Defendant personally participated in the deprivation
3   of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must also make
4   factual allegations sufficient to state a plausible claim for relief. *See Twombly*, 550 U.S. at 555;
5   *Iqbal*, 556 U.S. at 677-78; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

**DISCUSSION**

**A.   Whether the TAC States a Federal Claim**

1.   Detective Hewitt

Plaintiff does not allege that Detective Hewitt was involved in the APD's response to his argument with Towasha, the raid of his home, or the midnight visit to Towasha on that same night. Rather, he alleges Hewitt met Towasha for the first time the following day. Plaintiff conclusorily alleges Hewitt used his authority to make sure Plaintiff was "charged", but the TAC does not set forth any facts showing Hewitt had any role in charging Plaintiff after his arrest, which occurred before Hewitt met Towasha. Plaintiff alleges Hewitt suggested he would try to keep Plaintiff in jail "as long as he could" but does not allege Hewitt in fact took steps to lengthen Plaintiff's detention after his arrest. Plaintiff instead contends Hewitt inappropriately pursued Towasha while she was married to Plaintiff and a witness against him, and removed Towasha's phone and a Macy's gift card from APD custody. But Plaintiff does not allege facts showing that Hewitt's removal of this evidence was unlawful, that it contributed to the length of his detention, or that it exacerbated the criminal charges against him. Plaintiff also does not allege Hewitt wrote the "bogus" report that was basis for the East County Today News's article. Finally, there are no facts supporting Plaintiff's "belief" that Hewitt was trying to frame him in connection with a homicide investigation. Plaintiff's allegations about Hewitt, if true, are troubling, but they do not support a claim that Hewitt conducted unreasonable searches and seizures or deprived Plaintiff of his liberty or property without due process.

The TAC continues to suffer from the same deficiencies the Court identified in dismissing Plaintiff's earlier pleadings. *See* Second Screening Order at 5-6 ("Plaintiff contends alternatively that Detective Hewitt was trying to frame Plaintiff and/or was trying to visit Plaintiff's wife, but

7

1   he does not allege Detective Hewitt arrested him, caused the District Attorney to attempt to revoke
2   his probation, or filed a false police report regarding the June 4, 2015 incident. Plaintiff's
3   allegations fail to clearly articulate how Detective Hewitt violated Plaintiff's rights.").

As such, the TAC does not state a plausible federal claim against Detective Hewitt.

### 2. Doe Defendants

To the extent Plaintiff's federal claims are based on the conduct of Doe Defendants in connection with the June 2015 raid, his arrest, his subsequent detention, the false police report, the no bail hold, or the dismissal of the criminal charges, Plaintiff fails to allege facts sufficient to show those Does Defendants violated his constitutional rights.

Plaintiff alleges the Doe Defendants raided his home at gunpoint and took him to jail (TAC ¶ 21); were "super extra friendly" with Towasha during their midnight June 5th visit and joked about meeting her at work (*id*. ¶ 20); and placed him on a no bail hold so he could not bail out, even though he was "only on informal court probation, on a misdemeanor" (*id*.). Plaintiff alleges no facts showing these actions violated his Constitutional rights, *i.e*., by alleging the Doe Defendants had no probable cause to arrest him, used unreasonable force, or unlawfully prevented him from posting bail. He seems to assert the wrongfulness of the arrest is established by the fact the charges subsequently were dismissed. This is insufficient. To state a claim for wrongful arrest, Plaintiff must allege facts that the Doe Defendants lacked probable cause to arrest him. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 918 (9th Cir. 2012). While Plaintiff could state an excessive force claim by alleging the Doe Defendants who raided his home "at gun point" drew their guns at close range, pointed them at his head while he was unarmed and handcuffed, all in connection with a misdemeanor offense (*see, e.g.*, *Robinson v. Solano Cty.*, 278 F.3d 1007 (9th Cir. 2002)), Plaintiff has alleged no facts beyond that officers "raided [his] home at gunpoint and took him to jail in front of his family." TAC ¶ 21. This is insufficient as it does not allege facts showing the Doe Defendants' actions were unreasonable under the circumstances. *See Robinson*, 278 F.3d at 1013-14.

To state a claim for malicious prosecution, Plaintiff would need to allege the Doe Defendants prosecuted him with malice and without probable cause, and that they did so for the

8

purpose of denying him equal protection or another specific constitutional right (*Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)); he does not. Plaintiff does not allege plausible facts that the Doe Defendants caused him to be held on a "no bail hold"; on the contrary, he alleges the judge in fact released Plaintiff on bail, which she set at $15,000 (TAC ¶ 24). "California vests judicial officers with the exclusive authority to enhance or reduce bail. Pursuant to traditional tort law principles of causation, which we apply to § 1983 claims, a judicial officer's exercise of independent judgment in the course of his official duties is a superseding cause that breaks the chain of causation linking law enforcement personnel to the officer's decision." *Galen v. Cty. of L.A.*, 477 F.3d 652, 663 (9th Cir. 2007) (internal citations omitted). Plaintiff's remaining allegations are that the Doe Defendants failed to discipline, supervise, and train Hewitt and other Doe Defendants; and engaged in an improper practice of making improper detentions/false arrests. TAC ¶¶ 32, 34, 35, 38-40. These are purely conclusory, as the TAC does not contain facts that show why this is true.

The TAC fails to allege with any particularity what the Doe Defendants did to violate Plaintiff's constitutional rights, and his allegations are no "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677.

3. Chief Cantando

Plaintiff conclusorily alleges Chief Cantando ratified Hewitt's actions and failed to train or discipline Hewitt for his conduct, but he offers no facts supporting those conclusory allegations. There are no facts, for instance, showing Cantando was aware of Hewitt's actions involving Plaintiff, Towasha, or the removed evidence; there are also no facts that Cantando failed to discipline Hewitt for his conduct. Somewhat contradictorily, Plaintiff alleges that after he provided the SMS Tracker information showing Hewitt's conversations with Towasha, Hewitt was investigated by APD and fired. As it found in connection with Plaintiff's federal claims against Hewitt, the Court finds the TAC does not state a plausible federal claim against Chief Cantando for failing to supervise, train or discipline Hewitt in connection with the events described in the TAC.

To the extent Plaintiff alleges Cantando is liable for failing to train, supervise, or discipline

9

the unnamed APD officers involved in the drafting of the report about Plaintiff's arrest, the raid on his home, the decision to charge Plaintiff, or the setting of a no bail warrant, Plaintiff again fails to plead facts sufficient to make his allegations plausible. Similarly, Plaintiff alleges that under Cantando, APD dismisses charges against wrongly accused defendants only before they might be compelled to disclose wrongdoing of its officers (TAC ¶¶ 16(c), 33), as Plaintiff contends happened when he filed a *Pitchess* motion (*id*. ¶¶ 3, 33), but the District Attorney—a County employee—is the person responsible for prosecuting or dismissing charges. Neither the District Attorney nor Contra Costa County is a defendant in this case.

### 4. Antioch

Plaintiff alleges *Monell* liability exists because Antioch, through the actions of APD and Cantando, had a policy of not adequately training, supervising, monitoring, or disciplining its officers such that officers could (1) freely remove booked evidence for one's own personal use and gain without a single adverse consequence; (2) freely write reports to deceive and mislead the district attorney to level false charges; and (3) dismiss charges against wrongfully accused defendants only before they might be compelled to disclose wrongdoing of APD officers or APD's inadequate policies. *See* TAC ¶ 16; *see also id*. ¶ 32-33.

As explained above, the Court has found the TAC does not allege sufficient facts to show that Defendants violated Plaintiff's constitutional rights through the conduct alleged. The TAC therefore does not state facts sufficient to show Antioch's policies, failure to train, or failure to supervise were the moving forces behind the violations of any of Plaintiff's federal rights.

Second, "[i]n order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere 'formulaic recitations of the existence of unlawful policies, conducts or habits.'" *Bedford v. City of Hayward*, 2012 WL 4901434, at *12 (N.D. Cal. Oct. 15, 2012) (quoting *Warner v. Cty. of San Diego*, No. 10-CV-1057-BTM, 2011 WL 662993, at *4 (S.D. Cal. Feb. 14, 2011)). Plaintiff's allegations about Antioch's purported policies are conclusory legal statements, and fail to identify a specific policy or show that such policy was the moving force behind the violation of Plaintiff's rights. "While the Court recognizes the inherent difficulty of identifying specific policies absent access to discovery, that is nonetheless the burden

of plaintiffs in federal court." *Roy v. Contra Costa Cty.*, 2016 WL 54119, at *4 (N.D. Cal. Jan. 5, 2016). Such a burden is especially important here, where it is facially implausible that Antioch maintains an official, City-sanctioned policy to unlawfully remove evidence, write false reports, and wrongfully charge defendants. *See Jones v. Cty. of Contra Costa*, 2016 WL 1569974, at *2 (N.D. Cal. Apr. 19, 2016).

Third, the TAC fails to state a *Monell* claim based on inadequate training because it alleges no facts to show which training policy amounted to deliberate indifference by Antioch. "[T]he inadequacy of police training may serve as the basis for Section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). A municipality is not liable under *Monell* "where an errant employee caused a constitutional violation, despite adequate training. This ensures that responsibility lies with the correct entity: the municipality." *Jones*, 2016 WL 1569974, at *3 (citing *Waggy v. Spokane Cty.*, 594 F.3d 707, 713 (9th Cir. 2010)); *see also Dougherty v. City of Colvina*, 654 F.3d 892, 900 (9th Cir. 2011) (negligence in training or supervision does not give rise to *Monell* claim; the need to train must be "obvious"). At most, the TAC alleges Hewitt acted errantly; it does not state sufficient allegations of underlying facts showing Antioch is responsible for his actions.

> "In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere 'formulaic recitations of the existence of unlawful policies, conducts or habits.'" Prior to *Twombly* and *Iqbal*, the Ninth Circuit had held that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that individual officers' conduct conformed to official policy, custom, or practice." However, such conclusory allegations no longer suffice and a plaintiff is required to state facts sufficient "to state a claim that is plausible on its face."

*Anakin v. Contra Costa Reg'l Med. Ctr.*, 2016 WL 2893257, at *4 (N.D. Cal. May 18, 2016) (internal citations omitted). The TAC does no more than state conclusory allegations that do not support a plausible claim against Antioch.

**B.     State Law Claims**

Plaintiff also asserts a number of claims under California law, including claims against all

11

1  Defendants for negligence and violation of California Civil Code section 52.1; against

2  "defendants, Detective Hewitt, and Does 1-25" for assault and battery, false imprisonment,

3  intentional infliction of emotional distress, and negligent infliction of emotional distress. *See*

4  TAC, Third through Eighth Causes of Action. Plaintiff alleges this Court has jurisdiction over the

5  matter because his claims raise a federal question, and that the Court has supplemental jurisdiction

6  over the state law claims. *See* TAC ¶ 2. Because the Court finds Plaintiff fails to state a federal

7  claim, it lacks supplemental jurisdiction over the remaining claims. Plaintiff is free to pursue

8  these claims in state court.

**C.     Leave to Amend**

In its Third Screening Order, the Court stated:

> The Court will grant Plaintiff leave to amend one final time. In any amended pleading, Plaintiff must identify with particularity how Hewitt and Cantando personally participated in the violation of Plaintiff's constitutional rights. If Plaintiff seeks to assert claims against Doe Defendants, he similarly must describe the conduct of those defendants with sufficient particularity to show how the Does personally participated in the violation of his constitutional rights. . .
>
> \*     \*     \*
>
> Plaintiff is granted leave to amend a third and final time.

Third Screening Order at 8-9. Despite the Court's guidance, Plaintiff for the fourth time has failed to assert facts that support a federal claim. As such, the Court will not allow Plaintiff further opportunity to amend his complaint.

# CONCLUSION

The Court **DISMISSES** Plaintiff's TAC for failure to state a federal claim. The Court informed Plaintiff the TAC would be his last opportunity to cure the defects the Court previously identified, and therefore dismisses his Section 1983 claims **WITH PREJUDICE**. The Court dismisses Plaintiff's state law claims without prejudice; Plaintiff may pursue his state law claims in California state court.

**IT IS SO ORDERED.**

Dated: June 1, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge